E-FILED
Friday, 12 June, 2020 10:30:39 AM
Clerk, U.S. District Court, ILCD

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION STORED AT PREMISES CONTROLLED BY GOOGLE FOR LATITUDE AND LONGITUDE 40.30785, -88.15474

Case No. 20-MJ- 7085

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

INFORMATION STORED AT PREMISES CONTROLLED BY GOOGLE TO LATITUDE AND LONGITUDE 40.30785, -88.15474 more particularly described on Att. A

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, U.S.C., Section 1951 | Hobbs Act Robbery |

The application is based on these facts:

See Affidavit of FBI Task Force Officer Tyrel Ledbetter, attached hereto and specifically incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Tyrel Ledbetter
*Applicant's signature*

Tyrel Ledbetter, FBI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: June 12, 2020

s/Eric Long
*Judge's signature*

City and state: Urbana, Illinois

Eric I. Long, Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
CENTRAL DISTIRCT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE PERTAINING TO LATITUDE AND LONGITUDE 40.30785, -88.15474 | ) ) ) ) ) | Case No. 20-MJ-7085 **FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Tyrel Ledbetter, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been continuously employed as such since April of 2019. In conjunction with my appointment to the FBI, I am a detective with the University of Illinois Police Department (UIPD) and have been employed as such since August 2017. Prior to my employment with the UIPD and appointment with the FBI, I was a Douglas County

Sheriff's Office Deputy and held assignments with the East Central Illinois Task Force (ECITF) from August 2011 until February 2016, as an Inspector. My duties as an FBI/TFO include investigating the criminal violations of the United States Code, including violent crimes and Armed Robbery (Hobbs Act) violations. I have gained experience to the conduct of such investigations through previous case work, formal training and in consultation with law enforcement partners in local, state and federal law enforcement agencies.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violation(s) of Title 18, United States Code, Section 1951 (Hobbs Act) have been committed by an unknown person or persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, this Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY**

6. Based on my training and experience, I know that cellular devices, such as mobile telephones, are wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers. In order to send or receive communications, cellular devices connect to radio antennas that are part of the cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

7. Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

8. Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless

connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

9. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

10. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

11. In addition, based on my training and experience, I know that Google is offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and Youtube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account. An individual can obtain a

Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google Maps and Youtube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

12. In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

13. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

14. Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the

user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

15. Based on my training and experience, I also known that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

16. Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this

information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

17. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

18. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the

account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

**PROBABLE CAUSE**

19. On Saturday, January 18, 2020, at approximately 11:26 a.m. Central Standard Time (CST) an unknown male, hereafter referred to as "suspect", entered the Russell Cellular Verizon Store located at 322 E. Champaign Ave. in Rantoul, Illinois. The suspect wore nondescript clothing covering his entire body, a black facemask, and gloves. The suspect immediately displayed a handgun and pointed the handgun at the store employee. The suspect directed the employee to a rear room at the back of the store where cellular phones and other electronic inventory is stored in a safe. The suspect entered the room with the employees and directed the employee to open the safe. While inside the back room, the suspect removed ordered the employee to remove cellular phones and iPad's from the safe and place them into a large bag. The suspect ordered the employee into a utility closet within the back room and directed the employee to county to sixty twice before exiting the closet. Thereafter, the suspect fled the business through a rear entrance with 47 devices totaling $33,429.75.

20. The suspect's entry into the Russell Cellular Verizon store was recorded on the store's surveillance equipment. The suspect's activities inside the store were recorded on the store's interior surveillance equipment.

21. Upon leaving the store, the suspect walked east through an alley and out of view of exterior surveillance equipment. The suspect was observed walking out of the alley and enter a waiting getaway vehicle parked facing northbound on Marshall St. The vehicle was driven by an unknown driver. The getaway vehicle is observed on a residential exterior surveillance camera arrive at the parked location and waiting for the suspect to arrive. According to surveillance cameras, the approximate window of time showing the suspect approach the store and subsequently enter the getaway vehicle was between 11:10 a.m. and 11:35 a.m. This 25-minute window of time corresponds to the requested time frame set forth in Attachment A in order to collect information submitted from those devices possessed by the suspect and getaway driver at the approximate time of the robbery and to exclude devices possessed by individuals not present within the area during the approximate time of the robbery.

22. Russell Wireless Verizon is located at 322 E. Champaign Ave. in Rantoul, Illinois, is located at the approximate latitude and longitude (in decimal format):

40.30785, -88.15474

23. An imaginary polygon marking the approximate contours of Marshall St. between Wabash St. and Champaign Ave. in Rantoul, Illinois, the location of the parked and occupied getaway vehicle, would mark the northeast corner at latitude/longitude 40.3076, -88.15398. The northwest corner would be at 40.3076, -88.15418. The southwest corner would be at 40.30707, -88.15417. And, the southeast corner would be at 40.30707, -88.15398. Hereinafter, this polygon is referred to as the "Target Location." The Target

Location is confined to the approximate borders of the location where the suspect, suspect vehicle and getaway driver were observed, so as to not collect information submitted by devices outside of the contours of the Target Location.

24. Furthermore, based on my training and experience investigating armed robberies and other robberies of commercial establishments such as banks, I know that robbers often carry cellular phones to assist in their getaway and to communicate with coconspirators.

25. Based on the foregoing, I submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Location described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crime(s) at issue in this case. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

26. In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique

device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Location described in Attachment A during the time period described in Attachment A.

b. The government will then review this list in order to prioritize the devices about which it wishes to obtain associated information.

c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquires.

**CONCLUSION**

27. Based on the forgoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

28. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

s/Tyrel Ledbetter

Tyrel Ledbetter, FBI Task Force Officer

Attested to by reliable electronic means
in accordance with Fed. R. Crim. P. 4.1 on June 12, 2020

s/Eric Long

Hon. Eric I. Long
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property To Be Searched**

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive location history data.

Initial Search Parameters

- Date: 1-18-2020
- Time: 11:10 a.m. through 11:35 p.m. Central Standard Time
- Target Location: Geographical area identified as
    - A polygon defined by four latitude/longitude coordinates in the format xx.xxxxxx, -xx.xxxxxx connected by straight lines.
    - NE : 40.3076, -88.15398
    - NW: 40.3076, -88.15418
    - SW: 40.30707, -88.15417
    - SE: 40.30707, -88.15398

**ATTACHMENT B**

**Particular Items to Be Seized**

**I. Information to be disclosed by Google**

Google shall provide responsive data (as described in Attachment A) to the government pursuant to the following process:

1. Google shall query location history data based on the Initial Search Parameters specified in Attachment A.

2. For each location point recorded within the Initial Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List").

3. The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4. Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires.

**II. Information to Be Seized**

All information described above in Section I that constitutes evidence of violations of **18 U.S. Code 1951** Hobbs Act Robbery: have been committed on 1-18-2020 involving unknown person(s).